UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.                                                              Case No: 6:17-cv-1257-Orl-37TBS

HARDCO HOLDING GROUP, LLC, et al.,

    Defendant.

## REPORT AND RECOMMENDATION

Pending before the Court is the Federal Trade Commission's Second Motion for Entry of Judgement by Default against Defendant Dequan Sicard (Doc 69). Upon due consideration, I respectfully recommend that the motion be **GRANTED**, in part.

## Background

The FTC brought this action against two companies and the two individuals alleged to control them, pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), and Section 814(a) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692l(a) (Doc. 1). The FTC alleges that Defendants, through a common enterprise, engaged in a scheme to defraud consumers through the collection of payments for debts the consumers did not actually owe or that Defendants did not have authority to collect. The complaint pleads each count collectively against all Defendants, and seeks temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief (Id.). Along with the complaint, the FTC moved for a temporary restraining order ("TRO"), which the Court issued, freezing Defendants' assets, appointing Brian

McDowell as receiver over the corporate Defendants, and entering other equitable relief (Docs. 4,15).

On July 20, 2017, the FTC, Receiver, and Defendants Hardco Holding Group LLC, S&H Financial Group Inc., and Daryl Hall stipulated to the entry of a preliminary injunction (Doc. 27). The following day, the Court held a show cause hearing to address why a preliminary injunction should not issue against Defendant Dequan Sicard (Doc. 32). Sicard was given prior notice of the hearing and an opportunity to appear telephonically, per his request, but he did not appear (Docs. 21, 22, 32). The Court subsequently entered a preliminary injunction against Sicard, finding that the FTC would ultimately succeed on the merits (Doc. 36). The Court entered a preliminary injunction against the other Defendants–Hall, S & H Financial, and Hardco– as stipulated (Doc. 35). Both the stipulated preliminary injunction and non-stipulated preliminary injunction continued the injunctive provisions of the TRO, including the asset freeze and the receivership.

On September 6, 2017, Sicard was served with a summons and the complaint (Doc. 45). He failed to respond and the FTC moved for a clerk's default, which was entered on October 5, 2017 (Docs. 51-53). On November 16, 2017, the Court granted, in part, a stipulated motion to stay the case to consider a settlement agreement between the FTC and the three appearing Defendants, and directed the FTC to file a motion for default judgment as to Sicard (Doc. 59).

On November 20, 2017, Sicard filed a Motion for Additional Time to File an Answer to the Complaint (Doc. 60) and moved to dissolve the TRO (Doc. 61). He informed the Court that he is currently incarcerated in the Vandalia Correctional Center in Vandalia, Illinois (Doc. 61 at 2). The Court denied both motions (Docs. 63, 65).

The FTC filed a Motion for Entry of Default Judgment against Sicard on November 22, 2017 (Doc. 64). Then, the FTC filed a Stipulation to Enter a Final Order for Permanent Injunction and Settlement of Claims as to Remaining Defendants Hardco Holding Group LLC, S&H Financial Group Inc., and Daryl Hall (Doc. 66). The stipulation asked the Court to enter a proposed final order (Doc. 66-1) and the Court obliged (Doc. 67). Because the stipulation and order provided for a judgment amount that differed from the amount sought in the motion for default judgment against Sicard, I denied that motion (Doc. 68), pending explanation. The FTC filed the instant supplement to the motion, to correct the "inadvertent error regarding the amount of total consumer injury." (Doc. 69). The motion includes a the declarations of the FTC's counsel and a paralegal Specialist (Docs. 69-2, 69-3), and a proposed order (Doc. 69-4). The motion has been referred to me for report and recommendation.[1]

## Discussion

### Standards of Law

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.1987). Nonetheless, a court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to

---

[1] No opposition has been filed as to the merits of the original motion, and the time for doing so has expired. As the instant motion simply corrects an error, I find the dispute to be ripe.

admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED. R. CIV. P. 8(a)(2)). This analysis is equally applicable to a motion for default judgment. See De Lotta v. Dezenzo's Italian Restaurant, Inc., No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, *5 (M.D. Fla. November 24, 2009).

"Once liability is established, the court turns to the issue of relief." Enpat, Inc. v. Budnic, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c),'[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." Enpat, 773 F. Supp. 2d at 1313 (citing FED. R. CIV. P. 55(b)(2)). Where all the essential evidence is of record, an evidentiary hearing on damages is not required. SEC v. Smyth, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005).

As the foregoing makes clear, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief.

The Allegations of the Complaint

The FTC's complaint alleges that since at least June 2015, Defendants, including Sicard, have engaged in a "scheme to defraud consumers through the collection of payments for debts that consumers do not actually owe or that Defendants do not have authority to collect." (Doc. 1, ¶12). Defendants allegedly contacted consumers and third parties falsely claiming that a lawsuit had been filed against them. When consumers tried to learn more about the purported lawsuits, Defendants' collectors threatened them with arrest or other legal action if they did not send funds for an alleged payday loan or other debt. In fact, the consumers did not owe any debt or, in situations where they did have an outstanding debt, Defendants had no authority to collect that debt. In either case, Defendants pocketed the money they collected from intimidated consumers. Since at least June 2015, Defendants have collected over $690,000 from consumers through their debt collection scheme (See Doc. 1, ¶¶12-27).

Counts I and II of the complaint allege that in numerous instances, Defendants used false and misleading representations to collect debts, including: claiming that consumers were delinquent on a payday loan or other debt Defendants had authority to collect; consumers had a legal obligation to pay Defendants (Doc. 1, ¶30); consumers would be arrested for failing to pay; and Defendants had filed or would file legal action against the consumers (Id., ¶33). As alleged in Count III of the complaint, in numerous instances, Defendants engaged in unlawful communications with third parties (Id., ¶41). Count IV alleges that in numerous instances, Defendants placed telephone calls to

consumers without meaningful disclosure of their identity (Id., ¶42). Count V avers that in numerous instances, Defendants made numerous false or misleading representations and means, including failure to disclose in their initial communications with consumers that the debt collector was attempting to collect a debt and that any information obtained would be used for that purpose, and failed to disclose in subsequent communications that the communication was from a debt collector. Defendants used business, company, or organization names other than their true names (Id., ¶43). As alleged in Count VI of the complaint, in numerous instances, Defendants failed to provide consumers with required validation notices (Id., ¶44).

The FTC alleges that Sicard is the vice-president of S&H Financial Group, and is or has been an authorized signatory on its bank accounts (Doc. 1, ¶9). It also avers that at all times material to the complaint, Sicard, acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in the complaint (Id.).

Analysis

Section 5(a) of the FTC Act prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). "To establish liability under section 5 of the FTCA, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." FTC v. Tashman, 318 F.3d 1273, 1277 (11th Cir. 2003).

Section 805(b) of the FDCPA bars debt collectors from communicating with third parties other than for the purpose of obtaining their home or workplace address or telephone number, unless the consumer consents to the third-party communication or the

communication is reasonably necessary to effectuate a post-judgment judicial remedy. 15 U.S.C. § 1692c(b). Section 806(6) of the FDCPA prohibits debt collectors from placing telephone calls to consumers "without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Section 807 of the FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 807(11) of the FDCPA requires debt collectors to disclose in their initial communications with consumers "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and "to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e (11). Section 807(14) of the FDCPA, 15 U.S.C. § 1692e (14), prohibits collectors from using a business, company, or organization name other than the true name of the collector's business, company, or organization. Finally, section 809(a) of the FDCPA requires that unless provided in the initial communication with the consumer, a debt collector must, within five days of the initial communication, provide the consumer with a written notice containing the amount of the debt and the name of the creditor, along with a statement that the collector will assume the debt to be valid unless the consumer disputes the debt within 30 days, as well as a statement that the debt collector will send a verification of the debt or a copy of the judgment if the consumer timely disputes the debt in writing. 15 U.S.C. § 1692g (a).

By virtue of the default, the well pled allegations against Sicard are taken as true. These allegations, coupled with the showing made with respect to the issuance of the TRO and Preliminary Injunction, are sufficient to establish liability for the claimed violations of the FTC Act and the FDCPA.

As for the relief sought, as alleged in the complaint (Doc. 1, ¶46), and implicitly recognized by the Court when it issued the TRO, Preliminary Injunction, and Order on stipulation, §13(b) of the FTCA, 15 U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), empower the Court to grant injunctive and such other relief as it may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

The FTC seeks injunctive and equitable monetary relief against Sicard. As set forth in the proposed Order (Doc. 69-4), the FTC requests the imposition of an injunction permanently banning Sicard from engaging in debt collection activities, assisting others in engaging in debt collection activities, and advertising, marketing, promoting, offering for sale, or selling, or assisting others engaged in the advertising, marketing, promoting, offering for sale, or selling, of any portfolio of consumer or commercial debt or any program that gathers, organizes, or stores consumer information relating to a debt or debt collection activities. The unrebutted showing here is sufficient to find that the permanent ban the FTC seeks is necessary and appropriate to protect consumers.

Section II of the proposed order contains a broad prohibition barring Sicard from making certain misrepresentations concerning any financial-related product or service, as those terms are defined in the order. These injunctive provisions bear a reasonable relation to Sicard's unlawful practices, yet are framed broadly enough to prevent him from engaging in similar illegal practices in the future.

Section III of the proposed order permanently bans Sicard from disclosing, using, or benefitting from previously obtained consumer information, such as consumers' names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account). These provisions are also necessary and appropriate.

The proposed order contains provisions obtained in other FTC actions to ensure enforceability of such orders: an order distribution requirement (Section VI); a provision requiring Sicard to submit a report discussing his compliance with the order and to notify the FTC of any changes in employment or residence status (Section VII); a provision requiring maintenance of records (Section VIII); and a provision permitting the FTC to monitor his compliance with the order through access to his business premises, if any, to inspect records and interview employees, by posing as consumers to monitor representations, and through procedures prescribed by the Federal Rules of Civil Procedure (Section IX).These provisions are not conceptually dissimilar to the compliance reporting requirements in the permanent injunction issued as to the other Defendants. Absent objection by Sicard, I see no reason not to include them here.

The proposed order also provides for entry of a judgment against Sicard in the amount of $702,059, which is consistent with the amount awarded against the other Defendants. As grounds, the FTC argues that persons who violate Section 5 of the FTCA can be held jointly and severally liable for the total amount of the consumer injury. The amount here is supported by the declaration of the FTC's paralegal, based upon her review of the records of the financial institutions where Defendants maintained their

accounts. While I accept the showing as to the amount of the consumer injury, the FTC's proposed order does not reflect the joint and several nature of the liability.

The Order on the stipulation recently entered by the Court with respect to the other Defendants recognizes certain asset transfers "in partial satisfaction of the judgment against the Settling Defendants," and imposes a suspension of the remainder of the judgment, subject to certain conditions (Doc. 67, pp. 9-13). As the FTC's complaint alleges joint and several liability as to all Defendants, to the extent the joint monetary liability is satisfied, in whole or part, the benefit of that satisfaction runs to all Defendants as "a plaintiff is entitled to only one satisfaction." Cooper v. Firestone Tire & Rubber Co., 599 F. Supp. 172, 174 (S.D. Ga. 1984). The "one satisfaction" rule "generally provides that a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271, 1276 (11th Cir. 2008) (applying the rule to federal causes of action), citing W. Page Keeton, Prosser & Keeton on the Law of Torts §§ 48-49, at 330-32, 335-36 (5th ed. 1984) and McDermott, Inc. v. AmClyde, 511 U.S. 202, 219, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994); see also Malibu Media, LLC v. Zumbo, No. 2:13-CV-729-JES-DNF, 2014 WL 2742830, at *2 (M.D. Fla. June 17, 2014) ("Equity 'provides that a plaintiff is entitled to only one satisfaction for a single injury,' thereby barring duplicative recovery ...") (internal citation omitted). For this reason, I cannot recommend that the Court adopt the provisions set forth in Section IV A. and B. of the proposed order, as I have no way of knowing if such transfers will result in a duplicative recovery. Rather, I recommend that the Court simply enter judgment that Sicard is jointly liable with the other Defendants for the $702,059.00, leaving collection matters (and appropriate crediting of any sums already paid in partial satisfaction) outside the terms of the judgment. With such a modification, I find the motion is due to be granted.

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) The motion be **GRANTED.**

(2) The proposed Default Judgment and Order for Permanent Injunction as to Defendant Dequan Sicard (Doc. 69-4) be entered, as modified above.

(3) Upon entry of the Default Judgment, the case be closed, subject to the final report of the Receiver and discharge of the receivership, as appropriate.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on December 8, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties