UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.                                  Case No. 6:17-cv-1257-Orl-37TBS

DEQUAN M. SICARD,

     Defendant.

_____

## ORDER

Plaintiff Federal Trade Commission ("**FTC**") commenced this action against Defendants Dequan M. Sicard ("**Sicard**") and Hardco Holding Group, LLC, S&H Financial Group, Inc., and Daryl M. Hall (collectively, "**Co-Defendants**") under the Federal Trade Commission Act, 15 U.S.C. § 53(b) ("**FTCA**") and Fair Debt Collection Practices Act, 15 U.S.C. § 16921(a) ("**FDCPA**") alleging that they engaged in a scheme to defraud consumers. (Doc. 1 ("**Complaint**").) Among other things, the FTC sought temporary, preliminary, and permanent injunctive relief and restitution. (*Id.* ¶ 1.)

After properly being served, Sicard failed to timely answer or otherwise respond, so the FTC sought the clerk's entry of default against him. (Doc. 51.) That was granted (Doc. 52), and following Sicard's continued failure to timely defend the action, the FTC moved for default judgment against him and requested entry of a permanent injunction against Sicard. (Doc. 69 ("**Motion**").)

On referral, U.S. Magistrate Judge Thomas B. Smith recommended granting the

Motion in part, by entering a permanent injunction against Sicard and finding him jointly liable with Co-Defendants for $702,059.00. (Doc. 70 ("**R&R**").) Sicard, currently incarcerated and proceeding *pro se*, did not object to the R&R, but separately filed a motion for relief from default judgment and the Court's order entering a permanent injunction against Co-Defendants—which did not apply to Defendant. (Doc. 72 ("**Response**").) The FTC opposed, construing the Response as an objection to the R&R. (Doc. 74.) The Court agrees that the Response should be construed as an objection, and, on de novo review, finds that the R&R is due to be adopted and the Response denied.

## I.   LEGAL STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

## II.   PROCEDURAL HISTORY

The FTC commenced this action on July 10, 2017, alleging that Sicard and Co-Defendants engaged in a pattern of deceptive and abusive debt collection practices that defrauded consumers of more than $690,000. (Doc. 1, ¶¶ 12–27.) With the Complaint, the FTC moved *ex parte* for a temporary restraining order (Doc. 4 ("**TRO**")), which the Court granted that same day (Doc. 15.) The FTC also sought a preliminary injunction against all

defendants, which the Court set for a hearing. (*Id.* ¶¶ XXIV.) Before that hearing, the FTC filed a consent motion with Co-Defendants stipulating to the entry of a preliminary injunction. (Doc. 27.) At the hearing—where Sicard did not appear, despite notice and an opportunity to appear telephonically—the Court addressed the proposed preliminary injunction and inquired about the appointed Receiver's opinion about its sufficiency. (Doc. 32.) Finding it sufficient, the Court then preliminarily enjoined Co-Defendants and separately entered a preliminary injunction against Sicard. (Docs. 35, 36.)

The case progressed, and Co-Defendants filed an answer to the Complaint. (Doc. 39.) Sicard did not. At the appropriate time, the FTC moved for an entry of default against Sicard (Doc. 51), which was granted (Doc. 52.) Co-Defendants and the FTC then moved to stay the case pending consideration of a settlement agreement (Doc. 57), which the Court allowed (Doc. 59). The case against Co-Defendants was therefore administratively closed. (*See id.*)

On November 20, 2017, Sicard submitted his first filings in the case: (1) a motion seeking to extend his time to answer the Complaint until May 9, 2018; and (2) a motion to dissolve the then-defunct Temporary Restraining Order. (Docs. 60, 61.) Finding Sicard's extension motion deficient, Magistrate Judge Smith denied Sicard's request in a comprehensive order that explained filing procedures, given Sicard's *pro se* status. (Doc. 61.) Following this, Sicard made no attempt to file a corrected version of that motion. The FTC the moved for default judgment against Sicard (Doc. 64), which Magistrate Judge Smith denied without prejudice based on a computational error (Doc. 68).

Meanwhile, the FTC reached a stipulated permanent injunction with Co-Defendants and moved for the Court's approval. (Doc. 66.) This was granted, so resolving all claims against Co-Defendants. (Doc. 67.) Turning its efforts toward Sicard, the sole remaining defendant, the FTC renewed its motion for default judgment with a corrected judgment amount. (Doc. 69.) As support, the FTC relied on the facts alleged in its Complaint—which Sicard admitted by virtue of his default—to establish his participation in a debt collection scheme that violated the FTCA and FDCPA. (Doc. 69-1, pp. 3–7.) Sicard, as a key perpetrator of the scheme, was liable for these violations along with Co-Defendants, so the FTC argued it was entitled to injunctive and equitable monetary relief. (*Id.* at 8–10.) The FTC also contended that the scope of its proposed order for permanent injunctive relief was appropriate in light of Sicard's conduct. (*Id.* at 10–14.) Sicard failed to respond.

Magistrate Judge Smith then issued his R&R finding default judgment against Sicard appropriate and recommending that the Court issue the permanent injunction. (Doc. 70.) On careful review, however, he found that the FTC's proposed monetary judgment did not reflect the joint and several nature of Sicard's liability with Co-Defendants. (*Id.* at 9–10.) Rather, he found that the FTC's proposed judgment—seeking $702,059 from Sicard, the same amount it sought from Co-Defendants—ran afoul of the "one satisfaction rule" and would allow for duplicative recovery. (*Id.* at 10.) To cure this, Magistrate Judge Smith recommended modifying the judgment against Sicard by finding him jointly liable with Co-Defendants for $702,059 and leave collection matters outside the terms of the judgment. (*Id.*)

The FTC did not object to the R&R, but Sicard filed a motion seeking relief from default judgment and the entry of a permanent injunction. (Doc. 72.) The FTC responded in support of the R&R. The matter is therefore ripe for review.

### III.    DISCUSSION

Sicard seems to generally oppose the entry of default and opposes the FTC's motion for default judgment against him, as well as the entry of a permanent injunction against him. (*Id.*) His Response does not address the R&R, but the Court will nonetheless construe this as an objection.[1] Upon review, the Court finds Sicard's arguments unavailing. Thus the R&R is due to be adopted and Sicard's Response denied.

### A.    Entry of Default

Federal Rule of Civil Procedure 55(a) allows entry of default against a party who has failed to plead or otherwise defend. Entry of default may be set aside for "good cause," which is a variable standard that takes into account whether: (1) the default was culpable or willful; (2) the defaulting party has a meritorious defense; or (3) the defaulting party acted promptly to correct the default. *See* F.R.C.P. 55(c); *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). "[I]f a party willfully defaults by displaying either an intentional or reckless disregard for judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951–52 (citation omitted).

---

[1] Sicard styles his motion as seeking "relief from default judgment," but because no default judgment has been entered against him, the Court liberally construes this to challenge the entry of default against him.

Here, entry of default was warranted because Sicard failed to answer or otherwise defend this action. (*See* Docs. 51, 52.) Nonetheless, Sicard seeks to set this aside, claiming: (1) "excusable neglect" due to his current incarceration; (2) "meritorious defenses"; and (3) "due diligence." (Doc. 72.) But none of these arguments demonstrate good cause to set aside the entry of default. Rather, the Court finds that Sicard willfully defaulted by failing to timely respond to the FTC's numerous filings, despite knowledge of this proceeding and the FTC's diligent attempts to induce his cooperation. (*See, e.g.*, Doc. 21 (FTC filing a motion on Sicard's behalf to allow him to appear telephonically at a hearing, which Sicard did not attend); Doc. 45 (reflecting FTC performed in-person service for Sicard).) Thus, the entry of default against Sicard remains.

## B.    Default Judgment

Next, the Court finds that default judgment is appropriate here. Under Federal Rule of Civil Procedure 55(b)(2), a court may enter default judgment against a properly-served defendant who fails to appear or otherwise defend an action against him. Through default, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for liability purposes. *Buchanan v. Bowman*, 820 F.3d 359, 361 (11th Cir. 1987). So long as the factual allegations of the complaint provide a sufficient legal basis to support entry of default judgment, a court may do so. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). To that end, a complaint must be founded on "well-pleaded allegations." *Id.*

Here, as established above, Sicard failed to answer or otherwise defend this action. Therefore, default is appropriate so long as the Complaint's allegations are well-plead.

Against this standard, the Complaint clearly suffices. It alleges that Sicard, along with Co-Defendants, engaged in a scheme to defraud consumers "through the collection of payments for debts that consumers do not actually owe or that Defendants do not have authority to collect" since at least June 2015. (Doc. 1, ¶ 12.) It details how the scheme operated, Sicard's role, and how such conduct violates the FTCA and FDCPA. (*See id.* ¶¶ 9, 12–44.) All in all, the Complaint's well-pleaded allegations support default judgment against Sicard and none of Sicard's previously-discussed arguments persuade the Court otherwise.

## C. Relief

Having established that default judgment is appropriate here, the only remaining issue is what relief to award. The FTC seeks equitable relief in the form of injunctive and monetary relief, as provided for by § 13(b) of the FTCA, 15 U.S.C. § 53(b), and Section 814(a) of FDCPA, 15 U.S.C. § 16921(a), to prevent Sicard from engaging in a variety of behavior related to debt collection. (*See* Docs. 1, ¶ 46; 64-4.) Looking at the Complaint and the Court's findings when it issued the TRO, preliminary injunction, and stipulated order entering a permanent injunction against Co-Defendants, Magistrate Judge Smith found the injunctive relief acceptable, and the monetary judgment appropriate to the extent Sicard is held jointly and severally liable with Co-Defendants for $702,059. (Doc. 70, pp. 8–10.) Sicard has not rebutted this finding. Therefore, the Court finds that both injunctive and monetary relief are appropriate to the extent identified in the R&R.

## IV. PERMANENT INJUNCTION AND MONETARY RELIEF

The Court, having considered the memoranda and exhibits filed in support of

said motion, and all other pleadings and files in this action, and now being fully advised in the premises, GRANTS the FTC's Motion and HEREBY ORDERS, ADJUDGES, AND DECREES as follows:

## FINDINGS

1.     The FTC brings this action pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*.  The FTC seeks both permanent injunctive relief and disgorgement of unjust enrichment for alleged deceptive and unfair acts or practices by Defendant Sicard in connection with the collection of purported consumer debt.

2.     The FTC has the authority under Section 13(b) of the FTC Act and Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*, to seek the relief it has requested.

3.     This Court has jurisdiction over the subject matter of this action and has jurisdiction over Defendant Sicard. Venue in the Middle District of Florida is proper, and the Complaint states a claim upon which relief may be granted against Defendant Sicard under Section 13(b) of the FTC Act and Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*.

4.     The activities of Defendant Sicard, as alleged in the Complaint, were in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44. Defendants are "debt collectors" collecting "debts," as those terms are defined in Sections 803(6) and 803(5) of the FDCPA, 15 U.S.C. §§ 1692a(6) and (5).

5.      Process and service of process as to Defendant Sicard is proper.

6.      Defendant Sicard is not an infant or an incompetent or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

7.      Defendant Sicard failed to file a timely answer or otherwise file any timely response to the Complaint. Accordingly, Defendant Sicard is in default.

8.      Since at least 2015, Defendants, acting in common enterprise, operated a multi-million dollar debt collection scheme that successfully swindled over $700,000 dollars from unsuspecting and terrified consumers. Defendants contacted consumers and third parties falsely claiming that a lawsuit had been filed against the consumer. When consumers tried to learn more about the purported lawsuits, Defendants' collectors threatened consumers with arrest or other legal action if they did not send funds for a purported payday loan or other debt. In fact, either consumers did not owe any debt or, in situations where consumers did have an outstanding debt, Defendants had no authority to collect that debt. In either case, Defendants merely pocketed the money they collected from intimidated consumers.

9.      As alleged in Counts I, II, V(a), V(b), V(c), V(d), and V(e) of the Complaint, in numerous instances, Defendants used false and misleading representations to collect debts, including claiming that consumers were delinquent on a payday loan or other debt that Defendants had authority to collection; consumers had a legal obligation to pay Defendants; consumers would be arrested for failing to pay; and Defendants had filed or would file legal action against consumers.

These misleading representations were likely to mislead consumers acting reasonably under the circumstances. Therefore, Defendants' practices constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). In making these representations, Defendants also (a) misrepresented the character, amount, or legal status of a debt in violation of Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e(2)(A); (b) misrepresented that any individual is an attorney or that any communication is from an attorney in violation of Section 807(3) of the FDCPA, 15 U.S.C. § 1692e(3); (c) misrepresented that nonpayment of a debt would result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person in violation of Section 807(4) of the FDCPA, 15 U.S.C. § 1692e(4); (d) threatened to take any action that could not legally be taken or that was not intended to be taken in violation of Section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5); and (e) used false representations or deceptive means to collect or attempt to collect a debt in violation of Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(10).

10.    As alleged in Count III of the Complaint, in numerous instances, Defendants engaged in unlawful communications with third parties in violation of Section 805(b) of the FDCPA, 15 U.S.C. §1692c(b).

11.    As alleged in Count IV of the Complaint, in numerous instances, Defendants placed telephone calls to consumers without meaningful disclosure of their identity in violation of Section 806(6) of the FDCPA, 15 U.S.C. § 1692d(6).

12.     As alleged in Count V(f) of the Complaint, in numerous instances, Defendants failed to disclose in their initial communications with consumers that the debt collector is attempting to collect a debt and that any information obtained would be used for that purpose, and failed to disclose in subsequent communications that the communication was from a debt collection, in violation of Section 807(11) of the FDCPA, 15 U.S.C. § 1692e(11).

13.     As alleged in Count V(g) of the Complaint, in numerous instances, Defendants used business, company, or organization names other than their true names in violation of Section 807(14) of the FDCPA, 15 U.S.C. § 1692e(14).

14.     As alleged in Count VI of the Complaint, in numerous instances, Defendants failed to provide consumers with required validation notices in violation of Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

15.     Defendant Sicard is the *de facto* principal and manager of the Corporate Defendants. He is listed as the vice president of Defendant S & H Financial Group, Inc. on corporate records, and as the president on merchant account applications. He has signatory authority over the Corporate Defendants' bank accounts and their telephone service. Defendant Sicard formulated, directed, controlled, had the authority to control, or participated in Defendants' unlawful debt collection practices, including the acts and practices that constituted the common enterprise.

16.     Defendants have caused consumer injury in the amount of at least $702,059.

17. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), empower this Court to issue injunctive and other relief against violations of the FTC Act and the FDCPA, and in the exercise of its equitable jurisdiction, to order restitution and the disgorgement of profits resulting from Defendants' unlawful acts or practices, and issue other ancillary equitable relief.

18. Defendant Sicard is likely to continue to engage in the activities alleged in the Complaint or otherwise violate Section 5 of the FTC Act and the FDCPA, unless he is prohibited from doing so by order of the Court. Accordingly, it is proper in this case to issue a permanent injunction that: (a) bans Defendant Sicard from (i) participating in debt collection activities, and (ii) advertising, marketing, promoting, offering for sale, selling, or buying any consumer or commercial debt or any information regarding a consumer relating to a debt; (b) prohibits Defendant Sicard from making certain misrepresentations concerning any financial-related product or service, including misrepresenting any material fact in connection with the advertising, marketing, promotion, or sale of a financial-related product or service, such as the terms or rates available for a loan, or the savings a consumer will receive from purchasing a debt relief service; (c) prohibits Defendant Sicard from disclosing, using, or benefitting from previously obtained consumer information, such as consumers' names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or any data that enables access to a customer's account (including a

credit card, bank account, or other financial account); and (d) provides for monitoring by the FTC of Defendant Sicard's compliance with such a permanent injunction.

19. It is proper in this case to enter an equitable monetary judgment against Defendant Sicard for his violations of Section 5 of the FTC Act and the FDCPA. Defendants who have violated Section 5 of the FTC Act can be held jointly and severally liable for the total amount of the consumer injury. The FTC is entitled to judgment against Defendant Sicard in the amount of $702,059, the injury caused to consumers by Defendants, even though this amount may exceed his unjust enrichment.

20. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

21. The entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Credit Repair Service**" means selling, providing, or performing any service (or representing that such service can or will be sold, provided, or performed) through the use of any instrumentality of interstate commerce or the mails, in return for the payment of money or other valuable consideration, for the express or implied purpose of (1) improving any consumer's credit record, credit history, or credit rating, (2) providing advice or assistance to any consumer with regard

to any activity or service described in clause (1).

B.     **"Debt"** means any obligation or alleged obligation to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment.

C.     **"Debt Collection Activities"** means any activities of a debt collector to collect or attempt to collect, directly or indirectly, a debt owed or due, or asserted to be owed or due.

D.     **"Debt Collector"** means any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  The term also includes any creditor who, in the process of collecting its own debts, uses any name other than its own which would indicate that a third person is collecting or attempting to collect such debts.  The term also includes any person to the extent such person collects or attempts to collect any  debt that was in default at the time it was obtained by such person.

E.     **"Defendant Sicard"** means Dequan Sicard and by whatever names might be known.

F.     **"Defendants"** means Hardco Holding Group LLC, S&H Financial Group Inc., Daryl Hall, and Dequan Sicard, individually, collectively, or in any combination.

G.     **"Financial-Related Product or Service"** means any product, service, plan, or program represented, expressly or by implication, to provide to any consumer, arrange for any consumer to receive, or assist any consumer in receiving:

1. An extension of consumer credit;

2. Credit repair services; or

3. Any secured or unsecured debt relief product or service.

H. "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

I. "**Secured or Unsecured Debt Relief Product or Service**" means, with respect to any mortgage, loan, debt, or obligation between a person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication to:

1. Negotiate, settle, or in any way alter the terms of payment or other terms of the mortgage, loan, debt, or obligation, including but not limited to, a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a person to a secured or unsecured creditor or debt collector;

2. Stop, prevent, or postpone any mortgage or deed of foreclosure sale for a person's dwelling, any other sale of collateral, any repossession of a person's dwelling or other collateral, or otherwise save a person's dwelling or other collateral from foreclosure or repossession;

3. Obtain any forbearance or modification in the timing of payments from any secured or unsecured creditor or debt collector;

4. Negotiate, obtain, or arrange any extension of the period of time within

which the person by (a) cure his or her default on the mortgage, loan, debt, or obligation, (b) reinstate his or her mortgage, loan, debt, or obligation, (c) redeem a dwelling or other collateral, or (d) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

5. Obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

6. Negotiate, obtain, or arrange, (a) a short sale of a dwelling or other collateral, (b) a deed-in-lieu of foreclosure, or (c) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a person's application for the mortgage, loan, debt, or obligation.

## ORDER

## BAN ON DEBT COLLECTION ACTIVITIES

I. **IT IS THEREFORE ORDERED** that the Defendant Sicard, whether acting directly or through any other person, is permanently restrained and enjoined from:

A. Participating in debt collection activities; and

B. Advertising, marketing, promoting, offering for sale, selling, or buying any consumer or commercial debt or any information regarding a consumer relating to a debt.

## PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO FINANCIAL-RELATED PRODUCTS OR SERVICES

II. **IT IS FURTHER ORDERED** that Defendant Sicard and his officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any financial-related product or service are permanently restrained and enjoined from:

A. Misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

1. The terms or rates that are available for any loan or other extension of credit;

2. Any aspect of any credit repair service, including but not limited to (a) any person's ability to improve or otherwise affect a consumer's credit record, credit history, or credit rating or ability to obtain credit; or (b) that any person can improve any consumer's credit record, credit history, or credit rating by permanently removing negative information from the consumer's credit record, credit history, or credit rating, even where such information is accurate and not obsolete;

3.      Any aspect of any secured or unsecured debt relief product or
service, including but not limited to (a) the amount of savings a
consumer will receive from purchasing, using, or enrolling in such
secured or unsecured debt relief product or service; (b) the amount
of time before which a consumer will receive settlement of that
consumer's debts; or (c) the reduction or cessation of collection
calls;

4.      That a consumer will receive legal representation; and

5.      That any particular outcome or result from a financial-related
product or service is guaranteed, assured, highly likely or probable,
or very likely or probable; and

B.      Advertising or assisting others in advertising credit terms other than those
terms that actually are or will be arranged or offered by a creditor or
lender.

## PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO ANY PRODUCTS OR SERVICES

**III.    IT IS FURTHER ORDERED** that Defendant Sicard and his officers, agents, and
employees, and all other persons in active concert or participation with any of
them, who receive actual notice of this Order, whether acting directly or
indirectly, in connection with promoting or offering for sale any product or
service are permanently restrained and enjoined from misrepresenting or
assisting others in misrepresenting, expressly or by implication:

A. That any person is an attorney or affiliated or associated with an attorney or law firm;

B. That any person owes any debt;

C. The nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be provided to the consumer; and

D. Any other fact material to a consumer's decision to purchase any good or service, such as (1) the total costs to purchase, receive, or use, and the quantity of, any good or service; (2) any material restriction, limitation, or condition to purchase, receive, or use any good or service; or (3) any material aspect of the performance, efficacy, nature, or central characteristics of any good or service.

## MONETARY JUDGMENT

**IV.** **IT IS FURTHER ORDERED** that:

A. Judgment in the amount of SEVEN HUNDRED AND TWO THOUSAND, AND FIFTY NINE DOLLARS ($702,059) is entered in favor of the FTC against Defendant Sicard, jointly and severally with Co-Defendants Hardco Holding Group, LLC, S&H Financial Group, Inc, and Daryl M. Hall, as equitable monetary relief.

B. All money paid to the FTC pursuant to this Order may be deposited into a fund administered by the FTC or its designee to be used for equitable

relief, including but not limited to consumer redress and any attendant expenses for the administration of any redress funds. If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the FTC may apply any remaining money for such other equitable relief, including but not limited to consumer information remedies, as the FTC determines to be reasonably related to the practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as equitable disgorgement. Defendant Sicard has no right to challenge any actions the FTC or its representatives may take pursuant to this Subsection.

## CUSTOMER INFORMATION

V. **IT IS FURTHER ORDERED** that Defendant Sicard and his officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A. Failing to provide sufficient customer information to enable the FTC to administer efficiently consumer redress. If a representative of the FTC requests in writing any information related to redress, Defendant Sicard must provide it, in the form prescribed by the FTC, within 14 days.

B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number,

other identifying information, or any data that enables access to a

customer's account (including a credit card, bank account, or other

financial account), that any Defendant obtained prior to entry of this

Order in connection with any debt collection activities; and

C.     Failing to destroy such customer information in all forms in their

possession, custody, or control within 30 days after receipt of written

direction to do so from a representative of the FTC.

Provided, however, that customer information need not be disposed of, and may be

disclosed, to the extent requested by a government agency or required by law,

regulation, or court order.

## ORDER ACKNOWLEDGMENTS

VI.     **IT IS FURTHER ORDERED** that Defendant Sicard obtains acknowledgments of

receipt of this Order:

A.     Defendant Sicard, within 7 days of entry of this Order, must submit to the

FTC an acknowledgment of receipt of this Order sworn under penalty of

perjury.

B.     For 20 years after entry of this Order, Defendant Sicard for any business

that he, individually or collectively with any other Defendant, is the

majority owner or controls directly or indirectly, must deliver a copy of

this Order to: (1) all principals, officers, directors, and LLC managers and

members; (2) all employees, agents, and representatives who participate in

conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which Defendant Sicard delivered a copy of this Order, he must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## COMPLIANCE REPORTING

VII.   **IT IS FURTHER ORDERED** that Defendant Sicard make timely submissions to the FTC:

A.     One year after entry of this Order, Defendant Sicard must submit a compliance report, sworn under penalty of perjury:

1.     Defendant Sicard must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the FTC may use to communicate with him; (b) identify all of his businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendant Sicard must describe if he knows or should know due to

his own involvement); (d) describe in detail whether and how he is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC.

2.  Additionally, Defendant Sicard must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.  For 20 years after entry of this Order, Defendant Sicard must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.  Defendant Sicard must report any change in: (a) any designated point of contact; or (b) the structure of any entity that he has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, Defendant Sicard must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Defendant Sicard must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against him within 14 days of its filing.

D.     Any submission to the FTC required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by an FTC representative in writing, all submissions to the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. Hardco Holding Group*,

X170043.

## RECORDKEEPING

**VIII.** **IT IS FURTHER ORDERED** that Defendant Sicard must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant Sicard for any business in which he, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A. Accounting records showing the revenues from all goods or services sold;

B. Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC; and

E. A copy of each materially different advertisement or other marketing material.

## COMPLIANCE MONITORING

**IX.** **IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant Sicard's compliance with this Order and any failure to transfer any assets as

required by this Order:

A.   Within 14 days of receipt of a written request from a representative of the FTC, Defendant Sicard must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this Order, the FTC is authorized to communicate directly with Defendant Sicard. Defendant Sicard must permit representatives of the FTC to interview any employee or other person affiliated with him who has agreed to such an interview. The person interviewed may have counsel present.

C.   The FTC may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant Sicard or any individual or entity affiliated with thim, without the necessity of identification or prior notice. Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.   Upon written request from a representative of the FTC, any consumer reporting agency must furnish consumer reports concerning Defendant

Sicard, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## ENTRY OF JUDGMENT

**X.**   **IT IS FURTHER ORDERED** that there is no just reason for delay of entry of this judgment, and that, pursuant to Federal Rule of Civil Procedure 54(b), the Clerk immediately shall enter this Order as a final judgment as to Defendant Sicard.

## RETENTION OF JURISDICTION

**XI.**   **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## V.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   U.S. Magistrate Judge Thomas B. Smith's Report and Recommendation (Doc. 70) is **ADOPTED, CONFIRMED**, and made a part of this Order.

2.   Plaintiff FTC's Motion for Entry of Judgment by Default against Defendant Dequan Sicard (Doc. 69) is **GRANTED IN PART AND DENIED IN PART.**

   a.   The Motion is **GRANTED** to the extent identified in this Order.

   b.   In all other respects, the Motion is **DENIED**.

3.   Defendant Dequan M. Sicard's Motion for Relief from Default Judgment and Order for Permanent Injunction (Doc. 72) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 23, 2018.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro Se* Party